## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **AMBRYA MYERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **v.** | ) | _____ |
| | ) | |
| **NELNET SERVICING, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## COMPLAINT

1.     This is an action for damages brought by an individual consumer, Ambrya Myers, against Nelnet Servicing, LLC ("Nelnet") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

## PRELIMINARY STATEMENT

2.     When Congress enacted the FCRA it found that the "banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system."  15 U.S.C. § 1681(a)(1).

3.     The FCRA imposes duties on persons who furnish information to a

consumer reporting agency (a "furnisher").  *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).  Specifically, the furnisher must take certain actions after receipt of notice of a consumer dispute from a consumer reporting agency.  15 U.S.C. § 1681s-2-(b)(1)(A-E).[1]

4.     Section 1681s-2(b) of the FCRA establishes a mechanism for consumers to dispute the accuracy or completeness of information that furnishers provide to consumer reporting agencies.  After a consumer has submitted a dispute to a consumer reporting agency, the consumer reporting agency must notify the furnisher of the disputed information.  15 U.S.C. § 1681i(a)(2).  The consumer reporting agency must provide this notice of dispute within five days of receipt of the dispute and must include "all relevant information" provided by the consumer. 15 § U.S.C. 1681i(a)(2)(B).

5.     Once a furnisher receives notice of a dispute from a consumer reporting agency, Section 1681s-2(b) requires that the furnisher "shall" (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency in connection with the dispute; and (3) report the results of the investigation to the consumer reporting

---

[1] Plaintiff asserts a claim against Defendant under Section 1681s-2(b), and not under Section 1681s-2(a).

agency.  15 § U.S.C. 1681s-2(b)(1)(A)-(C).

6.     The Eleventh Circuit Court of Appeals has instructed that furnishers must conduct a "reasonable" reinvestigation that involves "a detailed inquiry," "systematic examination" or "searching inquiry" into a consumer's dispute. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302-03 (11th Cir. 2016).

7.     Should the investigation determine that the disputed information is inaccurate or incomplete or cannot be verified, the furnisher must modify, delete, or permanently block the reporting of that information to consumer reporting agencies, as appropriate based on the results of the reinvestigation.  15 U.S.C. § 1681s-2(b)(1)(E).

## JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9.     Venue is proper in this Court under 28 U.S.C. § 1391 as Plaintiff is a resident of this district and a substantial part of the events and omissions giving rise to the claims occurred in this district.

## PARTIES

10.     Ms. Myers is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

11.     Defendant is a limited liability company that is headquartered in Nebraska, and it conducts substantial and regular business activities in this judicial district.

12.     Defendant can be served via its registered agent, CT Corporation System, at 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060-6808

13.     Defendant is a servicer of federal student loans.

14.     Defendant is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

15.     Ms. Myers has a twin sister.  They are different people with different social security numbers, different first names, different middle names, different debts, and different lives.

16.     Both Ms. Myers and her sister have loans with the United States Department of Education (the "DOE").

17.     Ms. Myers' DOE loans have different account numbers, open dates, balances, terms, and other information from her twin sister's DOE loans.

18.     Defendant has entered into a loan servicing contract with the DOE (the "Servicing Contract"), through which it reports loans to the consumer reporting agencies.

19. The DOE issued the Servicing Contract in this District and Division.

20. Within the last two years, Ms. Myers became aware that one or more of Equifax, Experian and Trans Union (the "CRAs") were reporting her sister's DOE loans serviced by Defendant as belonging to her.

21. This erroneous information misstates Ms. Myers' credit history by making it appear as if she has more loans and higher balances than she actually has, and it negatively impacts her credit score and her ability to obtain credit.

22. In attempts to fix the errors, Ms. Myers has filed several disputes with the CRAs.

23. As two examples, on July 25, 2023, Ms. Myers sent dispute letters via certified mail to Equifax and Trans Union.

24. In Ms. Myers' dispute letter to Equifax, she told it that the DOE/Nelnet loans ending in 7339, 6439, 1639, 5339, 5239, 3839, 3739, 8839, 8939 belonged to her twin sister, not her, and she asked Equifax to remove the accounts from her consumer report.

25. Equifax received Ms. Myers' dispute.

26. In Ms. Myers' dispute letter to Trans Union, she told it that the DOE/Nelnet loans ending in 7339, 6439, 1639, 5339, 5239, 3839, 3739, 8839, 8939

belonged to her twin sister, not her, and she asked Trans Union to remove the accounts from her consumer report.

27.    Trans Union received Ms. Myers' dispute.

28.    Equifax and Trans Union sent Defendant all relevant information about Ms. Myers' dispute that they received from Ms. Myers.

29.    Defendant received the information sent to it by Equifax and Trans Union.

30.    Defendant understood that Ms. Myers was disputing that it was reporting her twin sister's DOE accounts as belonging to Ms. Myers.

31.    Defendant did not conduct a reasonable reinvestigation with respect to the disputed information.

32.    Defendant simply reported to Equifax and Trans Union that it had verified the disputed information belonged to Ms. Myers.

33.    Because of Defendant's erroneous verifications, Equifax and Trans Union continued to report to third parties Ms. Myers' twin sister's accounts as belonging to Ms. Myers.

34.    Defendant failed to properly investigate Ms. Myers' dispute.  For example, Defendant did not review its internal records showing that the accounts disputed by Ms. Myers belonged to her sister, and not to her.

6

35.     Had Defendant reviewed its internal records, it would have seen that the accounts disputed by Ms. Myers as belonging to her twin sister did not belong to Ms. Myers.

36.     In particular, Defendant had provided a July 11, 2023 Loan Summary to Ms. Myers showing that the following accounts belonged to her:  accounts ending in 8639, 8739, 1039, 8239, 1139, 5039, 1439, 5139, 1539, 6239, 6339, 7539, 7639, 6039, 8239, 6539, 8339.

37.     Defendant had also provided a January 9, 2024 Loan Summary to Ms. Myers' twin sister showing that the following accounts belonged to Ms. Myers' sister:  accounts ending in 8839, 8939, 3739, 3839, 1639, 5239, 5339, 6439, 6539, 6339, 7339, 1039, 1139, 8839, 8339.

38.     Defendant possessed these two Loan Summaries at the time it reinvestigated Ms. Myers' disputes.

39.     Had Defendant reviewed its internal records, including its own Loan Summaries, it would have seen that the accounts disputed by Ms. Myers as belonging to her twin sister had her twin sister's name on them.

40.     Had Defendant reviewed its internal records, including its own Loan Summaries, it would have seen that the accounts disputed by Ms. Myers as belonging to her twin sister had her twin sister's social security number on them.

41.    Had Defendant reviewed its internal records, including its own Loan Summaries, it would have seen that the accounts disputed by Ms. Myers as belonging to her twin sister had the same balances as those listed in her twin sister's Loan Summary.

42.    Had Defendant reviewed its internal records, including its own Loan Summaries, it would have seen that the accounts disputed by Ms. Myers as belonging to her twin sister had her twin sister's address on them.

43.    Because of Defendant's failure to properly investigate Ms. Myer's disputes and its failure to correct its errors, Ms. Myers has suffered, and continues to suffer, actual damages, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with her normal and usual activities.

## FIRST CLAIM FOR RELIEF

### (15 U.S.C. § 1681s-2(b))

44.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

45.    Defendant understood the nature of Plaintiff's disputes when it received them from the CRAs.

8

46.     Defendant violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

47.     Defendant violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

48.     Defendants violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the reporting of the inaccurate and derogatory information it was reporting to the CRAs.

49.     As a result of Defendant's failures to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

50.     The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

51.     Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Actual damages to be determined by the jury, or statutory damages of $100 to $1,000, to be determined by the jury;

2. Punitive damages, to be determined by the jury;

3. Attorneys' fees; and

4. Costs of the action.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: March 29, 2024

By: /s/ Andrew L. Weiner
  Jeffrey B. Sand
  Ga. Bar No. 181568
  Andrew L. Weiner
  Ga. Bar No. 808278
  WEINER & SAND LLC
  800 Battery Avenue SE
  Suite 100
  Atlanta, GA  30339
  (404) 205-5029 (Tel.)
  (866) 800-1482 (Fax)
  js@wsjustice.com
  aw@wsjustice.com

*Counsel for Plaintiff*